IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

04 11880 WGY

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | |
| ATLAS TACK CORPORATION and ) | |
| M. LEONARD LEWIS, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

RECEIPT # _____
AMOUNT $ N\A
SUMMONS ISSUED, YES
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE 8\30\04

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action under Section 104(e) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, ("CERCLA"), 42 U.S.C. § 9604(e), seeking (a) an Order In Aid of Access to property owned by Atlas Tack Corporation, and (b) civil penalties for Defendants' unreasonable failure to comply with EPA's request and administrative order for access. Pursuant to the accompanying Motion of the United States for An Order in Aid of Immediate Access, the United States requests issuance of an Order in Aid of Immediate Access giving EPA and its representatives immediate access to property (hereinafter, "ATC Property" or the "Property") that is a portion of the Atlas Tack Corporation Superfund Site (the "Site"). The ATC Property is owned by Atlas Tack Corporation ("ATC") and is controlled

1

by M. Leonard Lewis in his individual capacity. The Property is located at 83 Pleasant Street, Fairhaven, Bristol County, Massachusetts. The ATC Property is more specifically defined by the Fairhaven Tax Assessor's Office as Lots 15, 16, 17, and 15D, Map No. 27 and Lot 94, Map No. 8.

2. EPA and its representatives need immediate access to the ATC Property in order to effectuate a remedial action at the Site, to address a threat to human health and the environment from hazardous substances which have been released to the environment.

3. Pursuant to Section 104(e)(5)(B) of CERCLA, 42 U.S.C. § 9604(e)(5)(B), the United States also seeks a civil penalty to be levied upon Defendants ATC and M. Leonard Lewis for their unreasonable refusal to provide access to the ATC Property.

4. Pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607, the United States will also seek reimbursement of response costs incurred in seeking access to the ATC Property, and in enforcing the Request For Access To Property and the Administrative Order Directing Compliance with Request For Access to the ATC Property, in the related cost recovery case United States v. Atlas Tack Corporation and M. Leonard Lewis, Civ. Action No. 03 CV 11601 WGY; (Civ. Action No. 01 CV 10501 WGY.

## JURISDICTION AND VENUE

5. This Court has exclusive jurisdiction over the subject matter of this action, pursuant to Sections 104(e) and 113(b) of CERCLA, 42 U.S.C. §§ 9604(e) and 9613(b), and 28 U.S.C. §§ 1331 and 1345.

6. Venue properly lies in the District of Massachusetts under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. §1391, because the ATC Property is located in

2

this district and the claims arise in connection with releases of hazardous substances that have occurred in this district.

## DEFENDANTS

7. ATC is a corporation organized and incorporated under the laws of the state of Massachusetts.

8. ATC is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

9. ATC owns and operates the ATC facility and controls access to the ATC Property.

10. M. Leonard Lewis is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

11. M. Leonard Lewis is the president of ATC; owns all of the common stock of GNI, Inc., which owns ATC; and controls access to the ATC Property.

## THE ATLAS TACK CORPORATION SUPERFUND SITE

12. The Atlas Tack Corporation Superfund Site includes the ATC Property, which is situated on a 22-acre parcel, more or less, owned by ATC and located at 83 Pleasant Street, Fairhaven, Massachusetts. The Site also includes a 3.2-acre parcel, more or less, of property abutting the southeast side of the ATC Property, which is owned by Hathaway-Braley Wharf Company ("Hathaway-Braley"), and other areas where hazardous substances may have migrated, including a portion of Boys Creek and its tidal marsh.

13. The Site is located in a primarily residential area and an elementary school is located only 200 feet northwest of the Site.

14. An unoccupied facility building is located on the Property, and is referred to as

the Main Building. The Main Building covers approximately three acres of land, and consists of the following three sections:

    a. the front, consisting of a two-story office building, which contained the ATC offices;

    b. the middle, consisting of a one-story portion of the building, in which most of the manufacturing took place, that has been previously and mostly demolished; and

    c. the rear, consisting of a three-story, deteriorated portion of the building, where manufacturing activities also took place.

15. Beneath the former middle section of the Main Building (now a concrete slab), the rear section of the Main Building and other areas of the Property, there is a system of trenches, sumps and pipes.

16. Beneath the middle section of the Main Building, there is a so-called plating pit and a pickling trench.

17. Between 1901 and 1985, ATC and its predecessors manufactured, <u>inter alia</u>, tacks, nails, and shoe eyelets at the Property. The operations, at times, included electroplating, acid-washing, enameling, parts cleaning and painting. ATC discharged process wastes containing acids, metals such as copper and nickel, cyanide and solvents into drains in the floor of the Main Building. As a result, some of the hazardous substances permeated the floors and timbers of the Main Building and migrated to adjacent soil and groundwater. ATC discharged wastewater from the facility's operations to an adjacent tidal marsh, and later to an on-site lagoon (which discharged to the tidal marsh), through a network of trenches, sumps, and pipes that exists underneath certain structures at the Site, particularly the former middle section and rear section

of the Main Building.

18. On August 13, 1998, the Bristol County Superior Court in the Commonwealth of Massachusetts entered a judgment against ATC in an action brought by the Town of Fairhaven to compel ATC to abate certain fire hazards at the Site. Pursuant to the 1998 judgment, ATC, inter alia, demolished the one-story, middle portion of the Main Building. A concrete slab that once was underlying the middle portion of the Main Building still remains, and in a deteriorated condition.

19. The rear portion of the Main Building, where ATC conducted some of its manufacturing activities, is dilapidated, and portions of its roof and third floor have collapsed.

## ENVIRONMENTAL RESPONSE AT THE SITE AND EPA'S SELECTED REMEDY

20. The EPA Region I Superfund Program became involved with the ATC facility in approximately 1984 when a Site inspection was conducted.

21. In 1988, the Site was proposed for inclusion on EPA's National Priorities List ("NPL"), 40 C.F.R. Part 300, a list of high priority hazardous waste sites in the United States that pose a danger to public health, welfare or the environment.

22. Following public comment on the proposed listing of the Site on the NPL, in February 1990, the Site was listed on the NPL, making it eligible for federal funding for further investigation and cleanup.

23. In the spring of 1990, EPA conducted a pre-remedial investigation of the Site, to learn more about the nature and extent of contamination at the Site.

24. By agreement executed on July 31, 1990, ATC granted EPA access to perform investigations, remedial design, and emergency response actions at the Site.

25. In May 1995, EPA completed the Remedial Investigation ("RI") in accordance with the NCP and CERCLA and began work on the Feasibility Study ("FS"), which involves the identification and evaluation of remedial cleanup alternatives for addressing contamination at the Site, and which itself was completed in July 1998, in accordance with the NCP and CERCLA.

26. After completing the FS, EPA issued a proposed remedial action plan on December 1, 1998, to address the Site's contaminated soil, sediment and groundwater.

27. Following the public comment period, during which time ATC submitted comments, on March 10, 2000, EPA issued a Record of Decision ("ROD"), selecting the remedial action for the Site.

28. For remedial purposes, EPA's ROD divides the Site into several areas: the Commercial Area; various Non-Commercial Areas (Solid Waste and Debris, Marsh, and Creek Bed Areas); and the Groundwater Area.

29. The ROD requires: (a) excavation of contaminated soil, sludge and sediment throughout the Site, treatment (where needed), and off-site disposal; (b) monitored natural attenuation of groundwater, enhanced by phytoremediation technology; and (c) land and groundwater use restrictions. As documented in the ROD, EPA selected remediation of the soil and sludge in the Commercial Area to address unacceptable risks to both human health and the environment posed by contaminated soil and sludge. EPA selected remediation of soil and sediment in the Non-Commercial Areas and groundwater in the Groundwater Area in order to address unacceptable risks to the environment caused by the migration of contamination to Boys Creek and the nearby tidal marsh, as well as unacceptable risks to human health for consumers of shellfish from Boys Creek.

30. EPA is implementing performance of the remedial action in stages. EPA requires immediate access to the ATC Property to proceed with the remediation of contaminated soil and sludge within the Commercial Area of the Property.

31. The Commercial Area is the upgradient area of the Site. Contamination from the soil and sludge in the Commercial Area leaches to the groundwater and surface water, and also migrates to the Non-Commercial Areas of the Site. If the Non-Commercial Areas were remediated first, contamination from the Commercial Area could and would likely re-contaminate the downgradient Non-Commercial Areas through the continuing migration of hazardous substances from the Commercial Area.

32. The Commercial Area is where ATC conducted its manufacturing operations, and includes the Main Building and areas adjacent to the Main Building. In total, the Commercial Area includes approximately ten acres of the ATC Property.

33. During the Remedial Investigation of the Site, EPA performed soil and sludge sampling in the Commercial Area of the Site, including the sampling of currently exposed soil and sludge found in the trenches and plating pit underneath the concrete slab. Through all of the soil and sludge sampling performed in the Commercial Area, EPA has identified the following hazardous substances in various locations within this area of the Site: metals (including arsenic, beryllium, cadmium, chromium, copper, lead, nickel, and zinc), cyanide, volatile organic compounds (VOCs, primarily toluene), semi-volatile organic compounds (SVOCs, primarily polycyclic aromatic hydrocarbons ("PAHs")), and polychlorinated biphenyls ("PCBs") (Arochlor 1260). These types of hazardous substances are commonly found in the wastes generated by manufacturing facilities such as the one operated by ATC.

34. Within the Commercial Area, the selected remedy for soil and sludge requires excavation and off-site disposal of contaminated surface soil (i.e., within two feet of the surface) to eliminate the unacceptable risk to human health presented by this soil. In addition, contaminated surface soil and sub-surface soil (i.e., below two feet from the surface) presents an unacceptable risk to the environment due to the migration of hazardous substances from this soil to groundwater and surface water and into Boys Creek and the nearby tidal marsh, and an unacceptable risk to human health through consumption of contaminated shellfish from Boys Creek. Thus, as part of the remedial action for soil within the Commercial Area, the ROD requires excavation and off-site disposal of contaminated surface and sub-surface soil.

35. The activities that EPA plans to perform within the Commercial Area during the remedial action include: additional sampling to better define the remediation areas; excavation of soil and sludge that exceed the surface and subsurface cleanup levels; and off-site disposal of contaminated soil and sludge at appropriately licensed facilities.

36. In order to complete the planned remedial activities, EPA intends to raze certain structures located on the Commercial Area:

A. First, EPA will remove the concrete slab. As part of the Remedial Investigation, EPA performed sampling under the concrete slab and found substantial quantities of highly contaminated sludge under the concrete slab in excess of EPA's soil cleanup levels. Removal of the concrete slab is necessary so that EPA can remediate contamination under the concrete slab through excavation and off-site disposal.

B. Second, EPA will remove the rear three-story portion of the Main Building. ATC disposed of waste into a system of trenches, sumps and pipes underlying this portion of the

8

Main Building. As a result of these activities, soil underneath this portion of the Main Building (as well as the concrete pad) is likely to be contaminated. The Fire Chief and the Building Commissioner of the Town of Fairhaven have determined that it is unsafe to enter this portion of the building due to its deteriorated condition. Removal of this portion of the Main Building is necessary so that EPA can safely sample the soil underneath it and, if necessary, remediate this soil through excavation and off-site disposal.

C. Finally, EPA will perform sampling of, within, and around the collection system of trenches, sumps and pipes underlying the concrete slab and the rear portion of the Main Building. EPA will also sample the remains of the plating pit and pickling trench below the concrete slab. Based on EPA sampling of some of these structures, and their former use in facility operations, all of these structures are likely to be contaminated. If contamination in excess of EPA's soil cleanup levels is found, EPA will raze and/or excavate these structures and dispose of contaminated debris, soil and sludge off-site.

37. EPA does not plan to raze any other buildings or structures at the Site at this time.

## EPA'S EFFORTS TO OBTAIN ACCESS

38. In a Request For Access To Property ("Letter Request"), dated August 2, 2004, faxed and sent via Federal Express to Mr. M. Leonard Lewis, President of Atlas Tack Corporation, and also sent via Federal Express to Mr. Lewis in his individual capacity, EPA requested access to the Property, and that Defendants indicate their consent by signing and returning the attached Consent For Access To Property by August 6, 2004, and apprised the Defendants that any failure to respond to the Letter Request would be considered a denial and that failure to consent to access could result in their liability for civil penalties of up to $32,500 for

each day of noncompliance with the Letter Request. ATC did not respond by August 6, 2004, and a letter from Defendant Lewis' counsel dated August 6, 2004, stated that Lewis could not grant or agree to the request for access because "he does not own the property at 83 Pleasant Street."

39. Neither Defendant made any attempt to confer with EPA regarding EPA's August 2, 2004 Letter Request.

40. Nonetheless, EPA conferred with Defendants on Tuesday, August 10, 2004, to confirm Defendants' responses thereto. During the August 10 discussion, ATC's counsel confirmed that ATC's failure to respond to the August 2, 2004 Letter Request indicated that it did not consent to the request for access.

41. On August 18, 2004, EPA issued Administrative Order Directing Compliance With Request For Access ("Administrative Order"), pursuant to 42 U.S.C. § 9604(e)(5). Specifically, the Order requires the defendants to grant entry and access to the ATC Property, "for the purpose of taking a response action by performing remedial action activities in the Commercial Area of the . . . Site." It identifies the specific remedial activities that could be undertaken and explains the basis or need for them. The Administrative Order further requires the Defendants to refrain from interfering with EPA's entry and access to the Site and performance of the selected remedial action. The Order includes a provision that Defendants' failure to comply with the Order would expose them to daily civil penalties of up to $32,500, in accordance with applicable law (42 U.S.C. § 9604(e)(5) and the Civil Monetary Penalty Inflation Adjustment Rule, 69 Fed. Reg. 7121, 40 C.F.R. Pt. 19.4). The Administrative Order was faxed to counsel for Defendants and hand-delivered to Defendants; Defendant Lewis was not home to receive the hand delivery.

42. The Administrative Order invited Defendants to request within three business days of receipt of the Administrative Order a conference with EPA to discuss the Administrative Order and the underlying factual basis for the issuance of the Administrative Order.

43. On August 19, 2004, counsel for Atlas Tack and Mr. Lewis responded by letter, asking for a telephone conference with EPA "to comment on and contest the need for EPA to undertake activities set forth in this Order."

44. The conference call was held on Monday, August 23, 2004.

45. During this conference call, the Defendants raised concerns only about the language in the Order reminding and again stating that Defendants' unreasonable failure to comply with the Order would expose them to penalties. Defendants indicated that a conference to discuss the reasoning for the selected remedial activities for the Site and their objections was unnecessary, as they had nothing to add to their Preliminary Injunction motion. It was clear from that conversation that Defendants have no interest in exploring whether any of their concerns can be addressed by EPA so that the selected remedial action for the Site can proceed. Accordingly, pursuant to Paragraph 52 of the Order, EPA advised the Defendants, by letter dated August 25, 2004, that the Order's effective date was August 25, 2004. Defendants have not complied with the Order.

## NEED FOR IMMEDIATE ACCESS

46. There is a reasonable basis to believe that there has been or "may be a release or threat of release of a hazardous substance or pollutant or contaminant" into the environment. The ATC Property is a property where hazardous substances may have been released, have been released, and threaten to be released within the meaning of Section 104(e)(3)(A)-(D) of CERCLA,

11

42 U.S.C. § 9604(e)(3)(A)-(D). Access is needed to initiate the remedial action, described above, as specifically authorized by 42 U.S.C. §9604(e)(3)(D).

## STATUTORY AUTHORITY FOR ENTRY AND RESPONSE ACTION

47. Whenever a hazardous substance is released or there is a threat of a release of a hazardous substance into the environment, the President, pursuant to Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1), is authorized:

> to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, . . . at any time . . ., or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment.

48. Section 104(e)(1) of CERCLA, 42 U.S.C. § 9604(e)(1), authorizes the President, his employees, and his duly designated representatives to enter a vessel, facility, establishment, or other place or property "if there is a reasonable basis to believe there may be a release or threat of release of a hazardous substance or pollutant or contaminant."

49. Section 104(e)(1) of CERCLA, 42 U.S.C. § 9604(e)(1), further authorizes the President, his employees, and his duly designated representatives to enter a vessel, facility, establishment, or other place or property to determine the need for response, to choose or take any response action under CERCLA or otherwise to enforce the provisions of CERCLA.

50. The places to which entry is authorized are set forth in Sections 104(e)(3)(A)-(D) of CERCLA, 42 U.S.C. § 9604(e)(3)(A)-(D). These places include, but are not limited to, any facility, establishment, place or property "where any hazardous substance or pollutant or contaminant may be or has been generated, stored, . . . disposed of . . . ;" "from which or to which

a hazardous substance or pollutant or contaminant has been or may have been released . . . ;" "where such release may be threatened . . . ;" or "where entry is needed to . . . effectuate a response action under this subchapter." As confirmed by EPA's sampling results, the Site is a facility where entry is authorized under Sections 104(e)(1) and (e)(3) of CERCLA, 42 U.S.C. §§ 9604(e)(1) and (e)(3). More particularly, EPA is authorized under Section 104(e)(3)(D) to enter the ATC Property for the purpose of effectuating any response action.

51. Section 104(e)(5)(A) of CERCLA, 42 U.S.C. § 9604(e)(5)(A), authorizes the President to issue a request for consent to access or an order directing compliance with an EPA request for consent to enter under Section 104(e)(3), 42 U.S.C. § 9604(e)(3).

52. Section 104(e)(5)(B) of CERCLA, 42 U.S.C. § 9604(e)(5)(B), authorizes the President, through the Attorney General, to commence a civil action to compel compliance with a request or order for entry or inspection, and states in pertinent part:

> Where there is a reasonable basis to believe there may be a release or threat of a release of a hazardous substance or pollutant or contaminant, the court shall take the following actions:
>
> (i) In the case of interference with entry or inspection, the court shall enjoin such interference or direct compliance with orders to prohibit interference with entry or inspection unless under the circumstances of the case the demand for entry or inspection is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.

53. The President's authority under Section 104 of CERCLA, 42 U.S.C. § 9604, has been delegated to EPA pursuant to Executive Order No. 12580; this authority was further delegated to EPA Regional Administrators by EPA Delegation No. 14-6 and redelegated to the Director of Region 1's Office of Site Remediation and Restoration by Regional Delegation No. 14-6.

54. Section 104(e)(5)(B) of CERCLA, 42 U.S.C. § 9604(e)(5)(B), as modified by the Civil Monetary Penalty Inflation Adjustment Rule, 69 Fed. Reg. 7121, 40 C.F.R. Part 19.4, authorizes the Court to assess a civil penalty of up to $32,500 for each day of noncompliance against any person who unreasonably fails to comply with the provisions of Section 104(e)(3) of CERCLA, 42 U.S.C. § 9604(e)(3) or with an Order issued pursuant to Section 104(e)(5)(A) of CERCLA, 42 U.S.C. § 9604(e)(5)(A).

## CLAIM

55. The preceding paragraphs are realleged and incorporated herein by reference.

56. The Site is a vessel, facility, establishment, or other place or property: "where any hazardous substance or pollutant or contaminant may be or has been generated, stored, . . . ," as authorized by Section 104(e)(3)(A) of CERCLA, 42 U.S.C. § 9604(e)(3)(A); "from which or to which a hazardous substance or pollutant or contaminant has been or may have been released," as authorized by Section 104(e)(3)(B) of CERCLA, 42 U.S.C. § 9604(e)(3)(B); "where such release is or may be threatened," as authorized by Section 104(e)(3)(C) of CERCLA, 42 U.S.C. § 9604(e)(3)(C); and "where entry is needed to determine the need for response or the appropriate response or to effectuate a response action under this subchapter," as authorized by Section 104(e)(3)(D) of CERCLA, 42 U.S.C. § 9604(e)(3)(D).

57. In accordance with Section 104(e)(1) of CERCLA, 42 U.S.C. § 9604(e)(1), EPA has a reasonable basis to believe that there is a release or a threat of a release of a hazardous substance, pollutant or contaminant.

58. EPA seeks immediate access and entry to the ATC Property, at reasonable times, to begin no later than September 24, 2004, for the purpose of effectuating a selected remedial action

in the Commercial Area of the ATC Property.

59. EPA is authorized by Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1) to conduct the remedial action.

60. The Defendants have interfered and continue to interfere with EPA's efforts to implement a response action at the Site because they refuse to grant EPA entry and access to the ATC Property, as EPA is authorized to obtain pursuant to Section 104(e)(3)(A), (B), (C), and (D) of CERCLA, 42 U.S.C. §§ 9604(e)(3)(A), (B), (C), and (D).

61. Unless restrained by an order of the Court, as authorized under Section 104(e)(5)(B) of CERCLA, 42 U.S.C. § 9604(e)(5)(B), the Defendants' continued denial of immediate entry and access will obstruct, impede or otherwise interfere with EPA's statutory authority to enter the ATC Property to implement the remedial action under CERCLA.

62. Each Defendant's unreasonable failure to comply with EPA's request for access, as explained above, renders each Defendant liable for a civil penalty not to exceed $32,500 for each day of noncompliance. 42 U.S.C. § 104(e)(5)(B).

## RELIEF REQUESTED

WHEREFORE, Plaintiff, the United States of America, respectfully requests this Court to:

1. Enjoin the Defendants, pursuant to Section 104(e) of CERCLA, 42 U.S.C. § 9604(e), from obstructing, impeding or otherwise interfering with entry and access by EPA, its officers, employees, or representatives, to the Commercial Area of the ATC Property for the purpose of taking any remedial action under CERCLA, or otherwise enforcing the provisions of CERCLA;

2. Assess civil penalties against Defendants pursuant to Section 104(e)(5)(B) of

CERCLA, 42 U.S.C. § 9604(e)(5)(B), for each day of noncompliance, for Defendants' unreasonable failure to comply with EPA's requests for access;

3. Award to the United States the costs of this action; and

4. Grant such other further relief as the Court may deem just and proper.

Respectfully submitted,

THOMAS L. SANSONETTI
Assistant Attorney General

ALFRED S. IRVING, JR.
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 305-8307
Fax: (202) 616-2427

MICHAEL J. SULLIVAN
United States Attorney
District of Massachusetts

GEORGE B. HENDERSON, II
Assistant United States Attorney
U.S. Attorney's Office
District of Massachusetts
One Courthouse Way
Suite 9200
Boston, Massachusetts 02110

OF COUNSEL:

MAN CHAK NG
Senior Enforcement Counsel
United States Environmental Protection Agency
New England – Region I
One Congress Street
Suite 1100, Mail Code SES
Boston, MA 02114-2023

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __UNITED STATES OF AMERICA v. ATLAS TACK CORP.__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ☐ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ☑ II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.
          *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

   ☐ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

   ☐ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

   ☐ V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
   __UNITED STATES V. ATLAS TACK CORP., 03-Civ-11601(WGY)__

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES ☐   NO ☑

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES ☐   NO ☑

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES ☐   NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES ☐   NO ☑

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES ☑   NO ☐

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division ☑   Central Division ☐   Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division ☐   Central Division ☐   Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES ☐   NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Alfred S. Irving, Jr.
ADDRESS  US Department of Justice, ENRD/EES, P.O. Box 7611, Washington, DC 20044-7611
TELEPHONE NO.  (202) 305-8307

(Coversheetlocal.wpd - 10/17/02)

# CIVIL COVER SHEET

JS 44 (Rev. 3/99)

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

## DEFENDANTS
ATLAS TACK COPROPATION and M. LEONARD LEWIS

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed: Bristol
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Alfred S. Irving, Jr., Trial Attorney, US Dept. of Justice, Environment & Natural Resources Division, Environmental Enforcement Section, P.O. Box 7611, Ben Franklin Station, Washington, DC, 20044-7611, (202) 305-8307

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

■ 1 U.S. Government Plaintiff
☐ 2 U.S Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)
Place an "x" in one box for the Plaintiff and one box for the Defendant

|  | PLA | DEF |  | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC
☐ 630 Liquor Laws
☐ 640 R.R & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting &
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS - Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
■ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

■ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 U.S.C. Section 9604 - Order in Aid of Immediate Access

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ■ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE Honorable William G. Young
DOCKET NUMBER 03-Civ-11601(WGY)

DATE 08/26/2004
SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____